166 N.J. Super. 191 (1979)
399 A.2d 333
CHERYL SUTTON LYTLE, PLAINTIFF,
v.
CITY OF NEWARK, A MUNICIPAL CORPORATION, GERALDINE PONTOJO, FRED MAIER, BOARD OF CHOSEN FREEHOLDERS OF COUNTY OF ESSEX, JOHN DOE AND RICHARD ROE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 30, 1979.
*192 Mr. Frank DiGiovanni for plaintiff (Messrs. Berenson, Kessler and Woodruff, attorneys).
Mr. Thomas Matthews, Assistant Corporation Counsel, City of Newark, for defendant.
MARZULLI, J.S.C.
This action arises out of an automobile accident on December 16, 1974. Plaintiff was driving east on Second Avenue in Newark while defendant Pontoja was heading north on Clifton Avenue. The two cars collided at the intersection of Clifton and Second Avenue, which is controlled by traffic lights. These lights were not functioning. Plaintiff has brought this suit against the city, claiming that the malfunctions caused the accident.
*193 The city has moved for a judgment of dismissal at the end of plaintiff's case. Since plaintiff seeks to impose liability upon a governmental entity, reference must be made to our Tort Claims Act to decide the motion. N.J.S.A. 59:4-2 provides:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a neglect or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition. Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
N.J.S.A. 59:4-1 defines what is meant by a "dangerous condition":
"Dangerous condition" means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.
In order to survive this motion plaintiff must prove not only that a jury could reasonably infer that the broken lights created a "dangerous condition," but also that this dangerous condition could have proximately caused the accident. For the reasons expressed below, plaintiff has failed to meet her burden as to both of the above elements.
Assuming for the purpose of this motion that the traffic lights were in fact broken, I will turn first to the "dangerous condition" requirement in N.J.S.A. 59:4-1. The very wording of N.J.S.A. 59:4-1 makes it clear that the *194 burden of proof as to the existence of a dangerous condition is more stringent than the burden of proving negligence in an ordinary civil case. The recent case of Polyard v. Terry, 160 N.J. Super. 497 (1978), further supports this conclusion. In Polyard the Appellate Division reversed a jury verdict against the State, holding that there was insufficient evidence to warrant the submission to the jury the question whether a highway was in a "dangerous condition" within the meaning of the Tort Claims Act. The alleged dangerous condition in Polyard was a slight declivity followed by some exposed aggregate on a state highway. The court there reveals a restrictive interpretation of N.J.S.A. 59:4-1:
Obviously not every defect in a highway, even if caused by negligent maintenance, is actionable. N.J.S.A. 59:4-1 requires that the defect create "a substantial risk of injury" when the highway is used with due care "in the manner which it is reasonably foreseeable that it will be used." When a motion for involuntary dismissal is made it requires the trial judge to make a preliminary determination as to whether the alleged condition is in fact a dangerous one within the meaning of the statute. Otherwise the legislatively-decreed restrictive approach to liability would be illusory. [at 508]
The Polyard court further refines the definition of "dangerous condition" by reference to California's Tort Claims Act, the immunity statute upon which our statute was based. See Setrin v. Glassboro State College, 136 N.J. Super. 329 (App. Div. 1975). California's statute defines a "dangerous condition" as follows:
* * * a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used. Section 830 (a) [160 N.J. Super. at 508; emphasis supplied]
The use of the phrase "substantial risk" led the Polyard court to conclude, as a matter of law, that the proofs were insufficient to submit to the jury.
So, too, in the case at bar. Granting plaintiff the benefit of all favorable testimony and all inferences for purposes *195 of this motion, the evidence reveals that the traffic signals were not operating at the time of the accident. As such, the intersection was like numerous other unregulated intersections and both plaintiff and the other driver were required to use due care in negotiating through it. In this case, in determining whether a dangerous condition exists, the court must consider the intersecting streets and the traffic lights as one unit making up the municipal property referred to in the statute.
The fact that the accident happened at all bespeaks of a lack of due care in the use of the intersection by one or both drivers. Plaintiff herself testified that she paused for several minutes at the intersection after she realized the light was not working. When she finally proceeded she determined when to do so by looking ahead to the next block at another set of traffic lights, waiting for a green signal, pausing for several more seconds and then proceeding. She did this, according to her testimony, because she assumed a timing pattern existed which governed the progression of green lights. Plaintiff never saw the other car, which was coming from her right, until it was two feet from her because, according to her testimony, the other car did not have its headlights on. As indicated in the statute, a "dangerous condition" becomes actionable only when the property is used with due care. N.J.S.A. 59:4-1. The manner in which each party proceeded indicates that the property was not used with due care. As such, a dangerous condition could not have existed.
Plaintiff's case also fails to meet the required burden of proof with regard to the issue of proximate cause, defined as "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Fernandez v. Baruch, 96 N.J. Super. 125, 140 (App. Div. 1967), rev. on other grounds, 52 N.J. 127 (1968). It is difficult to see how the absence of a traffic control signal in any way contributed to the accident.
*196 Plaintiff's reliance on Bergen v. Koppenal, 52 N.J. 478 (1968) is misplaced. In that case the Supreme Court held that a jury question existed as to whether a municipality breached its duty to safeguard its citizens when it failed to prevent an accident occurring at an intersection governed by a malfunctioning traffic light. In Bergen, however, the malfunction in the signal was actively deceptive: a green light appeared at both junctions of the intersection. A jury could reasonably infer that the light was a cause of the accident, as each person approaching the intersection was, in effect, lulled into a false sense of security by the green light in his favor. We have no such situation in the case at bar. Assuming, for purposes of this motion, that the signal was not functioning, the driver knew the traffic light was not working and knew she was approaching what she should have considered to be an uncontrolled intersection and acted accordingly. The fact of the collision bespeaks the negligence of one or both drivers. Contrary to the Bergen case, neither party had the right to assume that he had the right of way. Common sense leads to the conclusion that any negligence causing the accident involved here was that of the plaintiff or the other driver or both and not of the City.
Since plaintiff has failed to meet her burden of proof as to proximate cause, and because she has failed to meet her burden of proof as to the existence of a "dangerous condition" as defined in the statute, the city's motion for judgment is granted.
Motion for judgment granted on behalf of City of Newark without costs.